UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL FLYNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 1927 CDP |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations for Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Flynn brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, §§ 1381, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

**Procedural History**

On September 8, 2014, the Social Security Administration denied Flynn's July 2014 applications for DIB and SSI, in which he claimed he became disabled

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

on February 28, 2011, because of lower back pain, bilateral knee pain, neck pain, and bone spurs in the right arm. Flynn later amended his disability onset date to March 21, 2014. At Flynn's request, a hearing was held before an administrative law judge (ALJ) on March 18, 2016, at which Flynn testified. A vocational expert and medical expert later responded to interrogatories put to them by the ALJ. On August 4, 2016, the ALJ denied Flynn's claims for benefits, finding the vocational expert's opinion to support a finding that Flynn could perform work as it exists in significant numbers in the national economy. On November 7, 2016, the Appeals Council denied Flynn's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Flynn claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ improperly discredited his subjective complaints and did not base the residual functional capacity (RFC) assessment on any medical evidence of record. Flynn also claims that the ALJ improperly relied on the vocational expert's opinion in finding him not disabled because the opinion was based on an improper hypothetical question and was inconsistent with the medical evidence and the *Dictionary of Occupational Titles* (DOT).

For the reasons that follow, the ALJ did not err in his determination.

## Medical Records and Other Evidence Before the ALJ

Flynn's work history reports, earnings records, and hearing testimony show that Flynn worked doing various construction jobs as a union laborer through 2013. He worked again in July 2014 for one week as a furniture mover.

With respect to the medical records and other evidence of record, I adopt Flynn's recitation of facts set forth in his Statement of Uncontroverted Facts (ECF #18) and as admitted by the Commissioner (ECF #23-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF #23-2), as they are unrefuted by Flynn. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.  Legal Standard

To be eligible for DIB and SSI under the Social Security Act, Flynn must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant

numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has non-exertional impairments, such as pain or postural limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *Pearsall*, 274 F.3d at 1219.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B. The ALJ's Decision

The ALJ found that Flynn met the requirements of the Social Security Act through March 31, 2018, and that he had not engaged in substantial gainful activity since February 28, 2011.[2] The ALJ found that Flynn suffered from hepatitis C, degenerative disc disease, and asthma, which he determined to be severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14.) The ALJ found Flynn to have the RFC to perform light work,

> except he is unable to climb ladders, ropes or scaffolds, but he can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl. He is limited to occasional use of his hands for fine manipulation. He is to avoid exposure to extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery. He is to avoid concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas.

(Tr. 14.) Given the varying nature of Flynn's past work as a laborer, the ALJ

---

[2] This is Flynn's originally-claimed onset date of disability. The ALJ acknowledges elsewhere in his decision that Flynn amended his alleged onset date to March 21, 2014. (*See* Tr. 11.)

determined that Flynn had no past relevant work for purposes of Social Security. Considering Flynn's RFC and his age, education, and work experience, the ALJ found vocational expert opinion to support a conclusion that Flynn could perform work as it exists in significant numbers in the national economy, and specifically as a furniture rental clerk and as a sales attendant. The ALJ therefore found Flynn not to be disabled at any time from February 28, 2011, through the date of the decision. (Tr. 21-22.)

C. RFC Assessment

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in

the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1. *Credibility*

When evaluating the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Here, after finding at Step 3 of the sequential analysis that Flynn's impairments did not meet the criteria for listing level disability, the ALJ determined Flynn's credibility and assessed his RFC. In discrediting Flynn's complaints, the ALJ set out several inconsistencies in the

record. Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's credibility determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Specifically, the ALJ noted that Flynn reported to various healthcare providers that he began experiencing back pain in 1994 as a result of a broken back from a forklift accident, had neck pain since 1991, and had upper extremity pain since 1995. The ALJ noted, however, that Flynn was able to work with this pain for a significant period of time, and the record shows Flynn worked as a construction laborer through 2013. Nothing in the record shows that Flynn's condition deteriorated so significantly at or near his alleged onset date, or since that time, to render him unable to continue to work with his impairments. *See Goff*, 421 F.3d at 792. Indeed, the only record from the time of Flynn's alleged onset date (March 2014) shows that Flynn was considered to be only minimally limited because of possible bilateral knee and hand arthralgia and possible lumbar spondylosis. (Tr. 297-301.)

The ALJ also noted that several examinations and diagnostic tests during the relevant period yielded essentially normal results and/or showed only mild degenerative changes. Tempered medical findings of "mild" or "minimal" impairments, including degenerative disc disease, are inconsistent with subjective complaints of disabling pain. *Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir.

2008). *See also Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may make factual determination that claimant's subjective complaints of pain are not credible in light of objective medical evidence to the contrary). To the extent the record also includes other medical evidence that Flynn exhibited limited range of motion and tenderness during other examinations, it is the ALJ's duty to resolve conflicts in the evidence, including medical evidence, and I may not substitute my opinion for the ALJ's. *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). The ALJ's observation that Flynn's treating physician did not impose any work-related restrictions also supports his determination that Flynn's complaints were not entirely credible. *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996).

The ALJ also noted that Flynn made inconsistent statements to treatment providers regarding circumstances giving rise to various injuries, *see Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (inconsistency in a claimant's statements valid reason to discredit subjective complaints), and that Flynn's daily activities of taking care of his dogs, preparing his own meals, performing household chores, using public transportation, going shopping on a weekly basis, and watching television were inconsistent with Flynn's complaints of limiting pain. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Accordingly, in a manner consistent with and as required by *Polaski*, the

ALJ considered Flynn's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from Flynn's credibility. Because the ALJ's determination not to credit Flynn's subjective complaints is supported by good reasons and substantial evidence, I must defer to this determination. *Julin*, 826 F.3d at 1086.

2. *Medical Evidence*

Flynn claims that the ALJ did not support his RFC findings with any medical evidence. This claim is without merit.

The ALJ thoroughly discussed all of the medical evidence of record, which showed Flynn not to experience functional limitations beyond those found by the ALJ. The ALJ specifically noted Flynn's March 2014 examination with Dr. Dennis Velez, who reported an essentially normal physical examination except for tenderness to the lumbosacral spine with some restricted range of motion, difficulty rising from a squatting position, and tenderness in the joints of the hands and wrists as well as the knees. Based on this examination, Dr. Velez opined that Flynn was not limited in sitting or standing, but would be limited to walking no more than one-third of the time. He also opined that Flynn was not limited in lifting or carrying, but would be limited to manipulating things no more than two-thirds of the time. (Tr. 16, 20, 297-301.) Giving Dr. Velez's opinion some weight, the ALJ incorporated these limitations into the RFC assessment and imposed

additional limitations as well. (Tr. 20.)

The ALJ also specifically discussed other physical examinations at which Flynn exhibited mild lumbar tenderness, spasms, and limited range of motion, but he also noted that hospital examinations after separate motor vehicle accidents showed full range of motion in all areas and minimal tenderness, if any. (Tr. 18-19.) He further noted that diagnostic imaging consistently showed mild to moderate degenerative disease, *see Steed*, 524 F.3d at 875-76, and that Flynn reported having no shortness of breath or cough when taking his medication for COPD. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (impairment controlled by medication not disabling).

The ALJ thoroughly discussed specific medical facts as well as the nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole, and assessed Flynn's RFC based on the relevant, credible evidence of record. *Accord* SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). No medical evidence in the record demonstrates that Flynn experienced limitations beyond those determined by the ALJ, and the ALJ properly discounted Flynn's subjective complaints of disabling limitations. *McCoy v. Astrue,* 648 F.3d 605, 615 (8th Cir. 2011) (court reviews record to ensure that ALJ did not disregard evidence or ignore potential limitations). Contrary to Flynn's assertion, the ALJ properly reviewed all the medical evidence of record,

including treatment records that revealed no condition that would limit Flynn's ability to function in the workplace to a degree that would render him disabled.

Because the ALJ based his RFC assessment upon review of all the credible, relevant evidence of record, and the RFC is supported by some medical evidence, it will not be disturbed. *See Baldwin v. Barnhart,* 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

D. <u>Vocational Expert Opinion</u>

In his interrogatories posed to the vocational expert, the ALJ asked the expert to assume an individual of Flynn's age, education, and work experience, and who had the RFC

> to perform light work . . . except he is unable to climb ladders, ropes or scaffolds, but he can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl. He is limited to occasional use of his hands for fine manipulation. He is to avoid exposure to extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery. He is to avoid concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas.

(Tr. 271.) The expert responded that such a person could perform light, unskilled work as a sales attendant and as a furniture rental clerk. (Tr. 272.) With respect to work as a sales attendant, the expert reported that 4.3 million such jobs exist in the United States, with 74,000 in the State of Missouri. Regarding work as a furniture rental clerk, the expert reported that 432,000 such jobs exist in the United States, with 7100 in the State of Missouri. (*Id.*)

Flynn claims that because the hypothetical was based on the ALJ's flawed RFC analysis, the expert's opinion could not constitute substantial evidence to support the ALJ's finding of non-disability. Flynn further argues that, regardless, a person with his RFC could not perform the specific work identified by the expert, because the DOT describes both jobs as requiring more than occasional use of the hands. Flynn contends that this unresolved conflict between the expert's opinion and the DOT prevented the ALJ from relying on the opinion to find non-disability. Flynn's contentions fail.

First, as discussed above, the ALJ properly determined Flynn's RFC based on substantial medical and other evidence of record. Because the hypothetical posed to the vocational expert included all of the RFC limitations as determined by the ALJ, the ALJ did not err in relying on the expert's opinion given in response to this proper hypothetical. *Guilliams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers.").

With respect to the DOT requirements for the jobs at issue, Flynn specifically contends that the jobs of sales attendant and furniture rental clerk require the ability to engage in frequent handling, which he claims is inconsistent with his RFC limitation to only occasional use of his hands for fine manipulation.

Flynn therefore claims that the expert's opinion regarding his ability to perform this work conflicts with the DOT and could not be relied upon for a finding of non-disability.

Testimony from a vocational expert constitutes substantial evidence if it is based on a properly phrased hypothetical and is not inconsistent with the DOT. *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014); *Porch v. Chater*, 115 F.3d 567, 571-72 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls." *Porch*, 115 F.3d at 572.

The DOT describes the job of furniture rental clerk – DOT job number 295.357-018 – as involving the lowest degree of finger and manual dexterity and requiring only occasional reaching, handling, and fingering. *See* DICOT 295.357-018 (G.P.O.), 1991 WL 672589. Because this is consistent with the RFC and hypothetical question posed to the expert, no conflict exists between the expert's opinion and the DOT. The ALJ could therefore rely on the opinion to find Flynn able to perform this work.

The DOT describes the job of sales attendant – DOT job number 299.677-010 – as requiring occasional fingering and frequent reaching and handling. Assuming for purposes of this discussion only that reaching and handling were included in the RFC limitation regarding Flynn's use of his hands for fine

manipulation, and thus that the expert's opinion conflicts with the DOT in this regard, the ALJ did not commit reversible error in finding that Flynn could perform this work. As discussed above, the ALJ properly relied on the expert's opinion to find that Flynn could perform work as a furniture rental clerk. The expert reported that 432,000 furniture rental jobs exist in the United States, with 7100 in the State of Missouri. Because these numbers are sufficient to show that a significant number of jobs exist in the national economy that Flynn can perform, *e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (affirming finding that 10,000 jobs in the national economy and 200 in state constitute a significant number); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (affirming finding that 30,000 jobs in national economy and 650 jobs in state constitute a significant number), the ALJ's reference to the sales attendant job as additional available work was superfluous at best. In order to meet his burden at Step 5 of the sequential analysis, the ALJ need only identify one occupation that exists in significant numbers that a clamant can perform with his RFC. 20 C.F.R. §§ 404.1566(b), 916.966(b). *See also Weiler v. Apfel*, 179 F.3d 1107, 1110 (8th Cir. 1999) (court need not exhaustively compare claimant's RFC to every job recommended by vocational expert where one identified job exists in significant numbers). Because there is a significant number of furniture rental clerk jobs that Flynn is capable of performing with the RFC as determined by the ALJ, the ALJ did not err in relying

on vocational expert opinion evidence to find Flynn able to perform this other work as it exists in significant numbers in the national economy.

## Conclusion

For all of the foregoing reasons, the ALJ's determination that Flynn is not disabled is supported by substantial evidence on the record as a whole, and Flynn's claims of error are denied.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Michael Flynn's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

                                                    _____
                                                    CATHERINE D. PERRY
                                                    UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2018.